IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA LUMBERMEN MUTUAL INSURANCE COMPANY, etc., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION 05-0302-WS-M |
| T.R. MILLER MILL COMPANY, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

    This matter is before the Court on the defendants' motion to dismiss. (Doc. 30). The parties have filed briefs in support of their respective positions, (Docs. 31, 36, 39), and the motion is ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motion to dismiss is due to be denied.

**BACKGROUND**

    Hurricane Ivan roared through south Alabama in September 2004. Among its casualties were a large number of trees on the defendants' property. The defendants, who were insured by the plaintiffs, made claim on the policy the next day. (Doc. 1, ¶¶ 8-10). The defendants sought policy benefits in the millions of dollars. (*Id*., ¶ 6). Disputes arose as to whether certain of the defendants' losses were covered, and the parties engaged in negotiations that were ongoing as of mid-May 2005. (Doc. 31 at 3 and Exhibit A at 2; Doc. 39 at 3). On May 19, 2005, the plaintiffs issued a denial letter and filed this declaratory action.[1] On May 23, 2005, the defendants received the denial letter, which constituted their first notice that the plaintiffs had denied their claim. Up to that point, the defendants had never threatened to sue the plaintiffs. (Doc. 31, Exhibit A at 1-2).

---

    [1]The defendants in brief mistakenly identify May 23, 2005 as the date the complaint was filed. (Doc. 31 at 3; Doc. 39 at 3, 4).

**DISCUSSION**

The defendants assert that the present matter does not present a "case or controversy" as required by the United States Constitution or an "actual controversy" as required by the Declaratory Judgment Act ("the Act").  (Doc. 30).  In their reply brief, the defendants urge the Court to exercise its discretion not to hear this case even if an actual controversy exists.  The Court addresses these arguments in turn.[2]

**A.  Actionable Controversy.**

"In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).[3]  The "actual controversy" requirement of the Act mirrors the "case or controversy" requirement of Article III, section 2 of the United States Constitution.  *Provident Life & Accident Insurance Co. v. Transamerica-Occidental Life Insurance Co.*, 850 F.2d 1489, 1491 (11th Cir. 1988).  In the statutory context, that requirement looks to "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *GTE Directories Publishing Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995)(quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  The Court herein refers to these twin constitutional and statutory requirements as demanding an "actionable controversy."

The parties disputed coverage before suit was filed, and the defendants properly concede that an actionable controversy existed throughout that period.  Their novel argument is that, once

---

[2]"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  The Court therefore confines its consideration to those arguments the parties have elected to assert expressly.

[3]To be "within [the] jurisdiction" of the Court, there must exist an independent fount of jurisdiction.  *Appling County v. Municipal Electric Authority*, 621 F.2d 1301, 1303 (5th Cir. 1980).  Jurisdiction here is supplied by diversity of citizenship.

the plaintiffs denied coverage on May 19, 2005 — or perhaps earlier, if the plaintiffs made the decision to deny coverage before sending the denial letter — the parties' dispute ended.  Thus, they continue, at the moment this lawsuit began no actionable controversy existed.  Because an actionable controversy must exist when the complaint is filed,[4] the defendants conclude that the Court lacks the power to hear this case.  (Doc. 31 at 2, 4, 8).

The defendants suggest that, although there was an actionable controversy as long as the parties were negotiating, the plaintiffs' denial of coverage represented a hardening of position and that there could be no remaining dispute, and thus no actionable controversy, until and unless the defendants contested that denial.  (Doc. 31 at 8; Doc. 39 at 3).  They base their argument on *Atlanta Gas & Light Co. v. Aetna Casualty & Surety Co.*, 68 F.3d 409 (11th Cir. 1995).  In *Atlanta Gas*, however, the insured filed suit to obtain coverage from its insurer for environmental cleanup costs before the insurers were even advised that any environmental issues existed; there could be no actual controversy in this situation because the insurers had never taken a stand as to whether they would provide coverage.  *Id*. at 412, 414-15.  Here, in sharp contrast, the defendants notified the plaintiffs of their losses, and the parties staked out conflicting positions on coverage, long before suit was filed.  To suppose that the controversy over coverage disappeared the moment the plaintiffs denied coverage is to assume that the defendants — after negotiating for the better part of a year in a dogged effort to obtain millions of dollars in policy benefits — would meekly accept the plaintiffs' announcement that they would pay nothing at all.  The defendants offer, and the Court can discern, no reason to indulge such a counterintuitive assumption.

In a related vein, the defendants argue that their ongoing negotiations with the plaintiffs, without any threat to sue them, demonstrates that they posed no real threat of filing such a suit.  (Doc. 39 at 6-7, 8).[5]  An actionable controversy exists, however, so long as there is a "practical

---

[4]*Atlanta Gas & Light Co. v. Aetna Casualty & Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995).

[5]While couched by the defendants as an appeal to the Court's discretion, the authority on which they rely invoked this standard to measure the existence of an actionable controversy. *Hyatt International Corp. v. Coco*, 302 F.3d 707, 711-12 (7th Cir. 2002).  The same is true of their reference to "advisory opinions," (Doc. 39 at 3, 6), which does not provide an additional

likelihood" that suit will occur.  *GTE Directories Publishing. v. Trimen America,* 67 F.3d at 1569.[6]  With or without the plaintiffs' denial of coverage, after eight months of fruitless negotiations over a multi-million dollar claim there was certainly a practical likelihood that the defendants would file suit.

Indeed, the defendants' insistence that they continued to negotiate with the plaintiffs until May 23, 2005, (Doc. 31, Exhibit A at 2; Doc. 39 at 4), itself undermines their jurisdictional argument.  Because this action was filed on May 19, the defendants' argument and evidence establishes that they continued to dispute the plaintiffs' position as of that critical date, thus providing an actionable controversy when suit was filed.

Next, the defendants suggest that no actionable controversy exists because, once the plaintiffs denied coverage, there was no remaining uncertainty needing to be clarified through the declaratory device.  (Doc. 31 at 4-5).  The plaintiffs' denial of coverage, however, did not remove the uncertainty regarding their obligations under the policy; it removed only the uncertainty regarding their *position concerning* those obligations.  Their actual obligations remain just as uncertain, and just as disputed, now as before.[7]

Finally, the defendants suggest in passing that no actionable controversy exists at present, (Doc. 31 at 2), an argument that might implicate concerns of mootness.  The Court rejects this unamplified statement, since the defendants in their answer "admit that a controversy exists between Plaintiffs and Defendants."  (Doc. 8, ¶ 6).

### B.  Discretion.

Even when an "actual controversy" exists that falls "within [the] jurisdiction" of the district court, the plaintiff has no absolute right to a federal forum.  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction

---

avenue of attack but merely describes a suit lacking the requisite actionable controversy.

[6]To the extent the Seventh Circuit embraces a higher standard, it is inapplicable in this Circuit.

[7]The Court notes that the defendants rely for this argument only on Georgia cases and an insurance treatise.  Neither, of course, informs federal law in this Circuit.

yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The Act "confer[s] unique and substantial discretion in deciding whether to declare the rights of litigants," and the district court's decision whether to exercise jurisdiction is reviewable on appeal only for abuse of that discretion. *Id*. at 286, 290. "The factors relevant in deciding whether to hear a declaratory judgment action are equitable in nature." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

The defendants' motion and opening brief are devoted to challenging the Court's jurisdiction. (Doc. 30, ¶¶ 1-2; Doc. 31 at 2-3, 9). In their reply brief, the defendants for the first time urge the Court to exercise its discretion not to entertain this action. (Doc. 39 at 4). Such arguments, initially raised in a reply brief, come too late and need not be reviewed.[8] Even were the Court to consider the defendants' belated arguments, they offer nothing sufficient to cause the Court to exercise its discretion not to accept jurisdiction.

The defendants first argue that the plaintiffs "have engaged in forum shopping and seek procedural advantage." (Doc. 39 at 4).[9] They point to the plaintiffs' conduct in "preemptively fil[ing] this action" while negotiations were ongoing and conclude that "the timing of Plaintiffs' actions" proves their point. (*Id*. at 4, 8). The Court finds insufficient evidence to support the defendants' contention.

In determining whether to cede jurisdiction over a federal declaratory action in favor of a pending, but later filed, state action, relevant factors include "whether the ... action was filed in apparent anticipation of the other ... proceeding" and whether the declaratory plaintiff engaged in

---

[8] *E.g., McCulley v. Allstate Technical Services*, 2005 WL 1475314 at *6 n.15 (S.D. Ala. 2005); *accord Flamenbaum v. Orient Lines, Inc*., 2004 WL 1773207 at *14 (S.D. Fla. 2004); *United States v. Georgia Department of Natural Resources*, 897 F. Supp. 1464, 1471 (N.D. Ga. 1995); *cf. Fogarde v. ENB Revocable Trust*, 263 F.3d 1274, 1296 n.19 (11th Cir. 2001)(applying a similar rule to arguments first raised on appeal in a reply brief).

[9] The defendants suggest that this argument is timely because "plaintiffs' response raises the issue." (Doc. 39 at 4). The Court cannot accept this suggestion because the defendants also insist that their own affidavit — which was filed along with their motion and principal brief — "dispel[s] ... any doubts" as to forum shopping. (*Id*.). At any rate, the plaintiffs' brief merely recognizes that the defendants might prefer a state forum, (Doc. 36 at 5), a statement that does not suggest or support a charge of forum shopping by the plaintiffs.

"improper forum shopping." *Manuel v. Convergys Corp.*, 430 F.3d at 1135-36, 1137.  Likewise, in such a situation a court may consider whether the declaratory device is being used for "'procedural fencing' — that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable." *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005).  The Court assumes for present purposes that the same considerations obtain in the absence of a pending state proceeding.  The Court also assumes that "seek[ing] procedural advantage," although not recognized as a separate factor in any binding case brought to the Court's attention, is another permissible consideration.

In *Manuel*, the declaratory plaintiff worked in Florida and was subject to a non-compete agreement with his Ohio employer, the declaratory defendant.  He secretly negotiated new employment with a third party and, upon determining that the non-compete was less likely to be enforceable under Georgia law, accepted employment there rather than in North Carolina.  In the space of a few days, he falsely told the defendant he had not accepted other employment, moved to Georgia, and filed suit there seeking a declaration that the non-compete agreement was unenforceable.  430 F.3d at 1133-34.  The Eleventh Circuit upheld the district court's determination that the plaintiff's filing was not improperly anticipatory because, unlike in previous cases, the defendant had not "threaten[ed] [the plaintiff] with specific legal proceedings."  *Id.* at 1136-37.  So also here, the defendants had not threatened to sue the plaintiffs and, as the defendants themselves insist, there was no real and immediate threat of such action.[10]

The *Manuel* Court also agreed that the plaintiff's conduct in filing suit in the jurisdiction most likely to rule in his favor did not constitute improper forum shopping, because that jurisdiction had more than a "slight or manufactured" relation to the controversy.  430 F.3d at 1137.  So also here, the Southern District of Alabama has a close relation to the controversy, as both defendants and at least part of the property at issue are located there.  There is even less

---

[10]Indeed, the facts of this case are weaker than those presented in *Manuel*.  Here, the plaintiffs did not file suit without first informing the defendants of the facts giving rise to the controversy.  On the contrary, the defendants were aware of the controversy for a full eight months before this suit was filed, and they were also aware that negotiations throughout that period had failed to produce a resolution of the controversy.

justification for a charge of forum shopping in this case, because the Court will apply the same substantive law that would have obtained had suit been brought by the defendants.

The defendants have not even shown that, but for the plaintiffs' prior filing, this case would have been litigated in state court rather than federal court.  The present parties are diverse, and the amount of policy benefits greatly exceeds $75,000, so that any state-court coercive suit brought by the plaintiffs would be removable.[11]  Indeed, the defendants, who concede they would sue in Alabama,[12] have not suggested that they would sue in a county outside the Southern District of Alabama, where they reside and where at least some of the subject property is located.  Thus, removal would have been to this very court.

The only "procedural advantage" the plaintiffs allegedly received by bringing this action is the designation as party plaintiff.  (Doc. 39 at 5, 7).  The defendants have failed to identify any particular "advantage" this nomenclature bestows.  The parties' dispute is presumably governed by Alabama law,[13] which requires the insured to prove coverage and the insurer to prove any exclusion from coverage.[14]  That distribution of burden applies to a declaratory action brought by the insurer just as surely as it does to a coercive action brought by the insured.  *E.g., Employers Mutual Casualty Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002); *Universal Underwriters Insurance Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 602, 604 (11th Cir. 1993).

---

[11]The defendants allude generally to the possibility of claims against agents of the plaintiffs whose citizenship might destroy diversity.  (Doc. 39 at 10, ¶ 6).  This suggestion would appear to be in tension with their assertion that the plaintiffs were aided in the claims process "by persons/entities over whom this court could not exercise jurisdiction."  (*Id*. at 9, ¶ 2).  At any rate, the defendants' inability to identify any cognizable cause of action against any potential non-diverse opponent a full seven months after suit was filed leaves the Court unable to conclude that such a situation is more than theoretical.

[12]The defendants explain that they have not filed a competing action because, pursuant to Alabama statute, "[n]o plaintiff is entitled to prosecute two actions *in the courts of this state* at the same time for the same cause of action and against the same party."  Ala. Code § 6-6-440 (emphasis added).  (Doc. 39 at 5).

[13]The defendants so insist.  (Doc. 39 at 9, ¶ 1).

[14]*E.g., State Farm Fire & Casualty Co. v. Shady Grove Baptist Church*, 838 So. 2d 1039, 1043-44 (Ala. 2002).

Next, the defendants insist that it would not "harm" the plaintiffs to wait to be sued. (Doc. 39 at 6).[15] The only authority they cite is dicta from the Seventh Circuit[16] but, at any rate, the uncertainty of the plaintiffs' liability has presumably harmed them by requiring the establishment of a reserve to cover the approximately $9.6 million the complaint asserts is at issue. (Doc. 1, ¶ 6).

Finally, the defendants ask the Court to consider the remaining factors identified in *Ameritas Variable Life v. Roach*. (Doc. 39 at 8-11). Because the purpose of these factors is to give appropriate attention to the concerns of "federalism, efficiency, and comity" by "balancing state and federal interests," 411 F.3d at 1331, it is unclear what significance they carry when there is no competing state action and thus no federalism or comity concerns to be addressed. At any rate, the defendants' primary argument under the *Roach* factors is simply that state law governs the parties' dispute, (Doc. 39 at 9-11, ¶¶ 1, 5, 9), a fact common to every insurance declaratory action and one that hardly justifies refusing to hear the case. Their only other argument is that they cannot receive full relief in this action, because they may have claims against persons or entities "over whom this court could not exercise jurisdiction." (Doc. 39 at 9-10, ¶¶ 2, 6). This may be so, but the defendants have not explained how their situation would be improved were the Court to decline jurisdiction so that they could sue in state court. Because "[a] federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state," *Ruiz de Molina v. Merritt & Furman Insurance Agency, Inc.*, 207 F.3d 1351, 1355 (11th Cir. 2000), the defendants presumably will be as unable to sue their alleged targets in state court as here.

The considerations identified in *Roach* are not exhaustive. 411 F.3d at 1331. Indeed, "the range of considerations available to the district court in deciding whether to entertain the declaratory action is vast ...." *Manuel v. Convergys Corp.*, 430 F.3d at 1137-38. Among those

---

[15]This argument, or a variant of it, is the only one implicating the Court's discretion that was even remotely raised in the defendants' motion and principal brief. (Doc. 30, ¶ 3; Doc. 31 at 9 (in the event of dismissal, the plaintiffs have "other adequate remedies" in the form of defending a coercive action).

[16]*See Hyatt International Corp. v. Coco*, 302 F.3d at 711-12.

circumstances appropriate for consideration, it seems to the Court, is the alacrity with which the defendant challenges the Court's assumption of jurisdiction. This conclusion is supported by the observation that the *Roach* factors are directed in part to vindicate judicial interests in efficiency, 411 F.3d at 1331, which would be sacrificed could a defendant hold its objections while the federal litigation advances. Here, the defendants were served with process on May 25 and 26, 2005, (Docs. 6, 7), filed an answer on June 10, 2005, (Doc. 8), filed a Rule 26(f) report on July 25, 2005, (Doc. 10), and then engaged in almost four months of discovery before challenging the jurisdiction of the Court. (Doc. 30). It was yet another month — over half a year after being served with process — before the defendants invoked the Court's discretion to decline jurisdiction. (Doc. 39). Without deciding whether the defendants' delay should be deemed a waiver of objection, the Court easily concludes that it represents an additional factor counseling against declining to exercise jurisdiction.

## CONCLUSION

A case or controversy under the Constitution and an actual controversy under the Act exists and existed when the complaint was filed. The defendants forfeited any appeal to the Court's discretion by failing to invoke it in their principal brief and, at any rate, the arguments and evidence they present would not persuade the Court to exercise its discretion not to hear the case.[17] For the reasons set forth above, the defendants' motion to dismiss is **denied**.

DONE and ORDERED this 31st day of January, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[17] It may reasonably be argued that, as in *Manuel*, the plaintiffs' "behavior was not exemplary." 430 F.3d at 1136. It may also be that, had the defendants presented different arguments or additional evidence — and in a timely manner — the Court might have exercised its discretion differently. The defendants' motion, however, is governed by the arguments and evidence they belatedly chose to offer.